IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARLA WEISSER,<br>    Plaintiff., | )<br>)<br>) |
| v.<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>    Defendant. | ) 2:13-cv-1046<br>)<br>)<br>)<br>) |

MEMORANDUM and ORDER

Mitchell, M.J.:

Presently before the Court for disposition are cross motions for summary judgment. For the reasons set forth below, the plaintiff's motion will be granted, the defendant's motion will be denied and the decision of the Commissioner will be reversed.

On July 22, 2013, Darla Weisser by her counsel, filed a complaint pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§405(g) and 1383(c)(3) for review of the Commissioner's final determination disallowing her claim for a period of disability or for disability insurance benefits and supplemental security income benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§416(i) and 423 and 1381 cf.

The plaintiff filed an application for disability and supplemental security income benefits on November 5, 2010 (R.148-155). Benefits were denied on April 1, 2011 (R.85-94). On May 11, 2011, the plaintiff requested a hearing (R.100-101), and pursuant to that request a hearing was conducted on June 7, 2012, (R.35-48). In a decision filed on June 21, 2012, an Administrative Law Judge denied benefits (R.11-30). On July 6, 2012, the plaintiff requested reconsideration of this determination (R.8), and upon reconsideration, and in a decision dated

May 20. 2013, the Appeals Council affirmed the prior decision (R.1-3). The instant complaint was filed on July 22, 2013.[1]

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his/her burden of demonstrating that he/she was disabled within the meaning of the Social Security Act..

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Johnson v. Commissioner, 529 F.3d 198 (3d Cir.2008) and the court may not set aside a decision supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358 (3d Cir.1999)

Presently before the Court for resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that the plaintiff is not disabled within the meaning of the Act.

At the hearing held on June 7, 2012 (R.35-48), the plaintiff appeared with a representative (R.37), and testified that she was fifty-two years old (R.39); that she has arthritis in her lower back (R.42); that she experiences panic attacks three or four times a week (R.41); that she takes medication which causes sleepiness (R.42, 43); that she can sit or stand for fifteen minutes and lift about ten pounds (R.42, 43) and that she spends her day reading (R.41).

---

[1] The petitioner apparently filed an earlier application on January 30, 2007 and benefits were denied on August 11, 2009 (R.58).

At the hearing a vocational expert was called upon to testify (R.45-47). He classified the plaintiff's past work as a collections agent, block room attendant and nurse's aide as unskilled to semi-skilled light to medium work (R.45-46). When asked to assume an individual of the plaintiff's age, education and past work experience who could perform light work and stand, walk or sit for up to six hours, without a fast production pace he responded that there were a wide range of jobs such an individual could perform (R.46-47).

The issue before the Court is whether or not the decision of the Commissioner is supported by substantial evidence.

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. Section 423(d)(3). These provisions

are also applied for purposes of establishing a period of disability. 42 U.S.C. Section 416(i)(2)(A).

It is provided in 42 U.S.C. Section 1382c(a)(3) that:

(A)... an individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

(B) For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

* * *

(D) For purposes of this paragraph, a physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

It is also provided that:

Notwithstanding the provisions of subparagraphs (A) through (E), an individual shall also be considered to be disabled for purposes of this subchapter if he is permanently and totally disabled as defined under a State plan approved under subchapter XIV or XVI of this chapter as in effect for October 1972 and received aid under such plan (on the basis of disability) for December 1973 (and for at least one month prior to July 1973), so long as he is continuously disabled as so defined.

42 U.S.C. Section 1382c(3)(F).

Pursuant to the authorization contained in 42 U.S.C. Section 1382c(3)(D), the Commissioner has promulgated certain regulations for the implementation of the Supplemental

Security Income Program. While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts. NLRB v. Staiman Brothers, 466 F.2d 564 (3d Cir. 1972); Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970). Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff is not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed by the Commissioner.

The plaintiff had left knee surgery performed on July 21, 2009 to repair a meniscal tear (R. 217-225).

The plaintiff was treated at Western Psychiatric Institute and Clinic between October 19, 2009 and November 21, 2010 for a bipolar disorder and an anxiety disorder. She was treated with medication (R.226-239).

In a report of a psychological evaluation conducted on February 3, 2011, Sharon R. Wilson, Ph.D. noted that the plaintiff was able to understand, retain and follow instructions and perform simple repetitive tasks if her anxiety was not triggered. Marked limitations were noted. It was also stated that the plaintiff had a limited ability to relate to others. A diagnosis of panic attacks and anxiety disorder was made (R.246-254).

In a report of an examination conducted on March 17, 2011, Dr. John Love noted a history of bipolar and anxiety disorders, possible degenerative disc disease and history of hypertension and chronic obstructive pulmonary disease. It was noted that the plaintiff could walk, stand or sit for one to two hours (R.259-267).

In records covering treatment rendered between January 7, 2009 and March 18, 2011, treatment for bronchitis, anxiety, GERD, asthma, chronic obstructive pulmonary disease and left knee arthritis are noted (R.268-305).

The plaintiff was treated at the St. Clair Hospital Emergency Room on September 20, 2011 for bilateral knee pain thought to be arthritic (R.317-319).

The plaintiff was treated by Dr. William Bader between October 26, 2011 and February 12, 2012 for constipation, bipolar disorder, chronic obstructive pulmonary disease and smoking (R.320-338).

The plaintiff's medication was managed at Western Psychiatric Institute and Clinic between October 19, 2009 and March 3, 2012. Her condition was said to be stable (R.306-316, 339-341).

In a residual functional capacity assessment completed on May 30, 2012, Dr. William Bader indicated a poor prognosis and reported the plaintiff could sit, stand or walk for about four hours, and rarely lift more than ten pounds. He also observed that the plaintiff was incapable of performing a low stress job (R.342-345).

The relevant regulations require explicit findings concerning the various vocational factors which the Act requires to be considered in making findings of disability in some cases. These regulations, published at 20 C.F.R. §§404.1501, et seq., set forth an orderly and logical sequential process for evaluating all disability claims. In this sequence, the Administrative Law Judge must first decide whether the plaintiff is engaging in substantial gainful activity. If not, then the severity of the plaintiff's impairment must be considered. If the impairment is severe, then it must be determined whether he/she meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to

6

establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether he/she can do his/her past relevant work. If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file. The finding of residual functional capacity is the key to the remainder of findings under the new regulations. If the plaintiff's impairment is exertional only, (i.e. one which limits the strength he/she can exert in engaging in work activity), and if his/her impairment enables him/her to do sustained work of a sedentary, light or medium nature, and the findings of age, education and work experience, made by the Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made. If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

> Based on the evidence presented, the Commissioner concluded:
>
> The claimant met the insured status requirements of the Social Security Act through December 31, 2011…
>
> The claimant has the following severe impairments: osteoarthritis of the knee status-post arthroscopic repair of the medial meniscus, obesity, a bipolar disorder, and a history of anxiety disorder…
>
> [T]here is no evidence that the claimant's arthritic disorders have resulted in sustained disturbance of gait or inability to ambulate effectively… In fact, the claimant testified that she used the stairs frequently throughout the day. Moreover, there are no imaging studies of the spine to corroborate a back disorder.
>
> Moreover, the severity of the alleged mental impairments of a bipolar disorder and frequent panic attacks, considered singly and in combination, do not meet or medically equal the criteria of [the] listings… To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining

social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

A State agency psychologist reviewed the claim in March 2011 and determined that there was evidence of a medically determinable affective disorder and an anxiety disorder but that the disorders did not precisely meet the diagnostic criteria in Listings 12.04 and 12.06. In rating the degree of loss in the broad areas of functioning, the consultant found mild restriction in activities of daily living; moderate difficulties in social functioning; moderate difficulties in maintaining concentration, persistence, or pace and no repeated episodes of decompensation, each of extended duration.

These mental assessments, made by an expert experienced in the evaluation of mental impairments in the context of the Social Security regulations, are consistent with the record and are accorded substantial weight…

The undersigned acknowledges that Sharon Wilson, Ph.D., the consultative psychological examiner, determined that the claimant had marked limitations in her ability to respond appropriately to supervision, co-workers, and work pressures in a work setting due to panic attacks, anxiety disorder by history. However, her findings of marked limitations are not entitled to controlling weight for several reasons including that they are not consistent with the clinical findings and assessments of the claimant's treating mental health provider or the record as a whole…

The evidence demonstrates mild restrictions in activities of daily living…

The evidence demonstrates moderate difficulties in social functioning…

[T]he [Western Psychiatric Institute and Clinic] treatment records do not substantiate the severity of her anxiety or the frequency of her panic attacks …

Thus, the evidence demonstrates no more than moderate difficulties in social functioning…

With regard to concentration, persistence or pace, the evidence demonstrates no more than moderate difficulties…

Moreover, Dr. Wilson opined that the claimant could concentrate if she was in a comfortable place but that her anxiety was triggered when she is around people…

As for episodes of decompensation, there is no evidence that the claimant has experienced … episodes of decompensation, which have been of extended duration during the period under adjudication. To the contrary, claimant's treating mental health provider consistently documents that the claimant's mood is stable on the prescribed medication regimen. The treating mental health providers have assigned a global assessment of functioning rating of 65, which is indicative of mild symptoms.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied…

After careful consideration of the entire record, the undersigned finds that that claimant has the residual functional capacity to perform light work… performed in an environment free of fast pace production requirements and work that is isolated from the public, with only occasional supervision, and only occasional interaction with coworkers…

[T]he medical evidence does not substantiate the statements concerning the intensity, persistence, and limiting effects of her physical or mental symptoms on her daily activities or her ability to work…

The undersigned notes that while Dr. Bader reported that the claimant had a history of arthritis … he does not document any musculoskeletal examination findings during any of the three office visits. Moreover, during the review of the systems in October 2011, the claimant reported having arthritis but denied having back pain, joint pain, joint swelling, muscle cramps, muscle weakness, stiffness, and arthritis during the review of the musculoskeletal system…

Dr. Bader has only treated the claimant since October 2011 and has documented few physical examination findings. Therefore, his opinions of disability and his physical assessment appear to be based primarily on the claimant's reported history and subjective complaints and not on objective medical evidence or clinical findings…

The medical evidence … reveals that the claimant has received minimal treatment for her knee, other than pain medications since the arthroscopic surgery in July 2009. There are no physical examination findings to corroborate her complaints of pain in the low back or the wrists. In addition, there is no objective evidence to support the claimant's statements that she cannot lift more than 10 pounds due to her wrist deformity…

Furthermore, the evidence documents that the medications effectively control her mental health symptoms…

> Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform…
>
> The claimant has not been under a disability … through the date of this decision (R.16-29).

The record evidence demonstrates that the plaintiff suffers from both physical as well as mental problems. Under the treating physician doctrine, "a court considering a claim for disability benefits must give greater weight to the findings of a treating physician than to the findings of a physician who has examined the claimant only once or not at all." Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993). An ALJ is permitted to weigh all evidence in hcontrary to the ALJ's ultimate decision is not fatal. Brown v. Astrue, 649 F.3d 193, 196 (3d Cir. 2011) (citing Kertesz v. Crescent Hills Coal Co., 788 F.2d 158, 163 (3d Cir. 1986) (providing that an "ALJ is not bound to accept the opinion or theory of any medical expert, but may weigh the medical evidence and draw its own inferences")); Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001) ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence.") (citing Burnett v. Comm'r of Social Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)). However, even though an ALJ is not bound to accept the statements of any medical expert, he may not substitute his own judgment for that of a physician. Kertesz, 788 F.2d at 163 (citing Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985); Gober v. Matthews, 574 F.2d 772, 777 (3d Cir. 1978)).

In this case, Dr. Bader (plaintiff's treating physician) and Dr. Love (the government's consultative doctor) are the only doctors to render any medical opinions regarding her physical capacity to work. Dr. Bader indicated that she could rarely lift more than ten pounds, that her prognosis was "poor," that she could walk at most one city block without rest or severe pain, that

she could sit, stand and walk about four hours in a work day, that she would likely be absent from work about three days per month, and that she was incapable of performing even "low stress" jobs. (R.342-345.) Dr. Love limited her to standing for one to two hours and sitting two hours in a workday, and several environmental restrictions. (R.264-65.)

As Defendant acknowledges in its brief, "Non-examining state agency and single decision maker Dion Shivley reviewed Plaintiff's claim in April 2011 and determined that she could perform light work with environmental restrictions." (ECF No. 15 at 5-6.) Defendant argues that Dr. Bader only saw the plaintiff on three occasions, but that is still more than Dion Shivley, a non-examining, non-physician who merely reviewed the record.

The nature and severity of the plaintiff's ailments have been corroborated by other physicians and only non-examining, non-treating non-physicians have appeared to negate her symptoms. For this reason, there is little evidence to support the conclusion of the Commissioner that the plaintiff is not disabled, and substantial evidence to support the conclusion that the plaintiff is unable to be gainfully employed.

Summary judgment is appropriate where there are no material issues of fact in dispute and the movant is entitled to judgment as a matter of law. Lichtenstein v. UPMC, 691 F.3d 294 (3d Cir. 2012). In the instant case, there are no material factual issues in dispute, the decision of the Commissioner is not supported by substantial evidence, and judgment will be entered for the plaintiff and against the defendant, and the decision of the Commissioner will be reversed.

An appropriate Order will be entered.

ORDER

AND NOW, this 8th day of January, 2014, for the reasons set forth in the foregoing Memorandum, the plaintiff's motion for summary judgment (ECF No. 12) is GRANTED; the defendant's motion for summary judgment (ECF No. 14) is DENIED and the decision of the Commissioner is reversed.

                                                          s/ Robert C. Mitchell
                                                          United States Magistrate Judge